UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**JEFFREY STEIN**,

       Plaintiff,

  v.

**CENTRAL INTELLIGENCE AGENCY**, *et al*.,

       Defendants.

Civil Action No. 17-189 (TSC)

## MEMORANDUM OPINION

Plaintiff Jeffrey Stein brought this action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, *et seq.*, challenging certain responses to a series of FOIA requests he submitted to nine federal agencies (collectively, "Defendants"): Central Intelligence Agency ("CIA"), Department of Justice ("DOJ"), Department of Defense ("DOD"), Office of Personnel Management ("OPM"), Office of the Director of National Intelligence ("ODNI"), Department of Education ("Education"), Department of State ("State"), and Department of Commerce ("Commerce"). The parties have cross-moved for summary judgment. For the reasons set forth below, the court will GRANT in part and DENY in part both parties' motions.

### I.    BACKGROUND

The court has already described most of the relevant background in its prior Opinion in this case. *See Stein v. CIA*, 454 F. Supp. 3d 1 (D.D.C. 2020) (ECF No. 45). In short, Plaintiff requested records from Defendants "related to Donald Trump's presidential campaign and presidential transition," including "information related to background investigations of fifteen individuals reportedly under consideration for senior positions in the Trump administration":

"Stephen Bannon, Pamela Bondi, Betsy DeVos, Carly Fiorina, Gen. Michael Flynn, Michael Flynn, Jr., Rudolph Giuliani, Jared Kushner, James Mattis, Gen. David Petraeus, Wilbur Ross, Jr., Rex Tillerson, Donald Trump, Jr., Eric Trump, and Ivanka Trump." *Id.* at 10. Then, dissatisfied with Defendants' responses to his request, Plaintiff brought this action under FOIA. *Id.* at 13.

This is the second round of summary judgment briefing. After the first, the court granted in part and denied in part the parties' respective cross-motions. *See* Order, ECF No. 46. Specifically, the court ordered the CIA to produce certain material, and ordered the FBI, DOJ, OPM, ODNI, Education, and Commerce to submit additional declarations providing certain information. *Id.* at 1–2. Since then, the parties have narrowed the issues substantially. *See* Defendants' Motion for Summary Judgment, ECF No. 77 ("Defs.' MSJ"); Plaintiff's Cross-Motion for Summary Judgment, ECF No. 82 ("Pl.'s MSJ").

## II.     LEGAL STANDARD

In FOIA litigation, as in all civil cases, summary judgment is appropriate only when the pleadings and declarations demonstrate that there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "FOIA provides a 'statutory right of public access to documents and records' held by federal government agencies." *Citizens for Resp. & Ethics in Wash. v. U.S. Dep't of Justice*, 602 F. Supp. 2d 121, 123 (D.D.C. 2009) (quoting *Pratt v. Webster*, 673 F.2d 408, 413 (D.C. Cir. 1982)). The Act requires federal agencies to comply with requests to make their records available to the public unless such "information is exempted under [one of nine] clearly delineated statutory [exemptions]." *Id.* (internal quotation marks omitted); *see also* 5 U.S.C. §§ 552(a)–(b).

In reviewing a motion for summary judgment under FOIA, the court must view the facts in the light most favorable to the requester. *See Weisberg v. U.S. Dep't of Justice*, 745 F.2d 1476, 1485 (D.C. Cir. 1984). Summary judgment in FOIA cases may be based solely on information provided in an agency's supporting affidavits or declarations if they are "relatively detailed and nonconclusory." *SafeCard Servs., Inc. v. U.S. Sec. & Exch. Comm'n*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (internal quotation and citation omitted). These declarations are "accorded a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents." *Id.* (internal quotation and citation omitted). "To successfully challenge an agency's showing that it complied with the FOIA, the plaintiff must come forward with specific facts demonstrating that there is a genuine issue with respect to whether the agency has improperly withheld . . . records." *Span v. U.S. Dep't of Justice*, 696 F. Supp. 2d 113, 119 (D.D.C. 2010) (citing *U.S. Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 142 (1989)) (quotation marks omitted).

### III.   ANALYSIS

Two categories of disputes remain. The first is whether certain Defendants (CIA, State, FBI, and ODNI) lawfully withheld information under FOIA exemptions. And the second is whether the court should revisit its earlier ruling that the CIA's search for records was adequate. The court will require further action with respect to certain Defendants' withholdings, but not with respect to CIA's search.

**A.  <u>Withholdings</u>**

The agency bears the burden of showing that responsive material withheld falls within a stated exemption, *see Petroleum Info. Corp. v. U.S. Dep't of the Interior*, 976 F.2d 1429, 1433 (D.C. Cir. 1992) (citing 5 U.S.C. § 552(a)(4)(B)), and its "justification for invoking a FOIA

exemption is sufficient if it appears 'logical' or 'plausible.'" *Ayuda, Inc. v. FTC*, 70 F. Supp. 3d 247, 261 (D.D.C. 2014) (quoting *Wolf v. CIA*, 473 F.3d 370, 374–75 (D.C. Cir. 2007)).

1. CIA

Documents 43–64 in the CIA's *Vaughn* index are records relating to the security clearance process for certain individuals. In the first round of summary judgment motions, Plaintiff did not contest CIA's withholding those documents under Exemptions 1, 3, and 5, but argued that they were improperly withheld under Exemption 6. The court's prior Opinion ordered the CIA to "produce [those] additional documents" without redacting at least the names of the individuals receiving security clearance investigations, which did not implicate substantial privacy interests. *Stein*, 454 F. Supp. 3d at 20. The court stated that it would defer consideration of whether "CIA failed to release all reasonably segregable, non-exempt information" from those documents after they were produced. *Id.* The parties now only contest CIA's continued withholdings with respect to documents 43, 45, and 46 (related to Michael Flynn, Sr.), and 50–55 (related to Stephen Bannon). *See* Defs.' MSJ at 7–8; Pl.'s MSJ at 2–6; ECF No. 85 at 2 ("Defs.' Reply & Opp'n).

The court concludes that CIA has met its FOIA obligations for the contested documents in all respects but one: It never actually produced the documents with at least the names unredacted to Plaintiff, as the court ordered. Instead, it "sent an email . . . apprising Plaintiff of those names." Defs.' Reply & Opp'n at 3. The court will accordingly grant partial summary judgment to Plaintiff by ordering that production. However, CIA may redact all information besides the names in those documents, for two reasons. First, CIA has clarified that all the remaining personally identifiable information ("PII") in the documents was typical, sensitive forms of PII, such as date of birth, place of birth, social security number, and an alternate identification number. *See id.*; ECF No. 85-5 ¶¶ 4–6. Second, and more importantly, Plaintiff

has not opposed CIA withholding the documents in full based on the other Exemptions it has asserted. As a result, there is no basis for compelling unredacted production of any other part of those documents besides the names, pursuant to the court's prior Opinion.

2. <u>State</u>

The parties have narrowed their dispute regarding documents withheld by State to portions of a single page in an "Adjudicative Analysis Worksheet" related to Rex Tillerson's security background investigation. *See* Defs.' MSJ at 9–14; Pl.'s MSJ at 5–7. Those portions, redacted under Exemptions 6 and 7(c), include (1) a description of "the level of background investigation conducted, the agency that conducted it, and the timing of that investigation," which is "revelatory of the extent to which the agency viewed the applicant as a security risk"; (2) "the [security clearance] recommendation itself,"—i.e., whether the agency recommended Tillerson as eligible or ineligible for clearance; (3) "a sentence below the [security clearance] recommendation related to ineligible recommendations," along with "the space below the sentence . . . , where anything in the applicant's background investigation identified as a potential security concern would be listed"; and (4) "the names of the evaluator (adjudicator) and reviewer who signed this recommendation page." ECF No. 77-1 ¶¶ 11–14 ("Supp. Matus Decl."). Plaintiff challenges the first three redactions, but not the fourth.

To determine whether Exemptions 6 and 7(c) justify the disputed redactions, the court must weigh the privacy and public interests in the withheld information. *See Stein*, 454 F. Supp. 3d at 32–33. The court has already identified a public interest "in revealing information about State's participation in the security clearance process for Tillerson," including whether his background investigation "revealed any issues of adjudicative concern." *Id.* at 33. Accordingly, in its prior Opinion, the court ordered State to provide more details on the privacy interests at stake. *Id.* But State's supplemental declaration largely repeats its conclusory assertions that

Tillerson and the government has a privacy interest in the redacted information, without providing sufficient details as to how the disclosure of that information could likely result in harassment or other harm. Supp. Matus Decl. ¶¶ 11–13. As a result, the court will require State to submit *ex parte* an unredacted copy of the page at issue, so that the court can review the redacted portions *in camera* and determine whether the balance of interests requires their disclosure.

   3.   FBI and ODNI

In its prior Opinion, the court deferred judgment on certain issues with respect to two Defendants, FBI and ODNI. First, the court required "FBI to submit an additional declaration explaining its search methodology for the two requests" regarding its process of conducting security clearance investigations for Ivanka Trump and Michael Flynn, and deferred ruling on FBI's other withholdings, along with their segregability, until after that submission. 454 F. Supp. 3d at 22. And second, the court required ODNI to "submit a supplemental declaration describing in more detail the agency's review for reasonably segregable information." *Id.* at 31.

In their latest Motion for Summary Judgment, Defendants did not address either of these issues, apparently under the impression that there was no longer any dispute that they had satisfied their obligations. *See* Defs.' MSJ at 1; Defs.' Reply & Opp'n at 5 n.1, 7. In fact, Plaintiff maintains that both FBI and ODNI improperly withheld information, but makes no arguments for that proposition other than noting Defendants' failure to address the issues. Pl.'s MSJ at 7. Defendants disagree, naturally, but likewise do not make any substantive arguments until their brief opposing Plaintiff's MSJ and replying in support of their own. Defs.' Reply & Opp'n at 5–7. Because the court will require further action from the parties on other issues in this case, it will again defer consideration of FBI and ODNI's withholdings, denying without

prejudice summary judgment to either party. The parties may file renewed motions for summary judgment on these issues at the appropriate time.

B. **Adequate search**

Finally, Defendants ask the court to amend its previous holding that CIA's search for records was adequate. The amendment of prior interlocutory orders may be granted, pursuant to Federal Rule of Civil Procedure 54(b), "as justice requires." *Lemmons v. Georgetown Univ. Hosp.*, 241 F.R.D. 15, 21 (D.D.C. 2007). Although "the discovery of new evidence" may warrant amendment, *Banks v. Booth*, 518 F. Supp. 3d 57, 62 (D.D.C. 2021), it does not do so here. Plaintiff has not "prove[d] that 'some harm, legal or at least tangible, would flow from a denial of reconsideration.'" *Id.* (quoting *United States v. Dynamic Visions, Inc.*, 321 F.R.D. 14, 17 (D.D.C. 2017)).

"[T]he adequacy of a FOIA search is generally determined not by the fruits of the search, but by the appropriateness of the methods used to carry out the search." *Guillermo Felipe Duenas Iturralde v. Comptroller of the Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003). In response to Plaintiff's request, CIA "personnel with expertise in conducting Agency records searches . . . consulted with Agency officials knowledgeable about the subject matter of the requests in order to ascertain the potential universe of responsive records and to identify all of the specific offices and individuals who would be likely to possess those documents." ECF No. 22-3 ¶ 10 (1st Shiner Decl.). CIA searched both electronic databases and hard copies of the two offices most likely to possess responsive records. *Id.* ¶ 12. It also conducted an email search using search terms such as "clearance," "background," and the names of all 15 individuals identified in Plaintiff's requests, as well as "logical synonyms, acronyms, and variations of these terms likely to reveal potentially relevant documents." *Id.* ¶ 14.

Plaintiff argues that the later discovery and production of two emails about Betsy DeVos referred to CIA by the Department of Education demonstrates that CIA's search was inadequate. The subject line of those emails reads "SCI Packages for Secretary of Education/Chief of Staff," and the only text in them states: "Please see attached packages for the Secretary of Ed and Chief of Staff. Can we please process these packages as priority? If you have any questions please contact me." ECF No. 82-1 at 2–3 (Pl.'s MSJ, Ex. A). But CIA's search understandably would not have located those emails—which lacked any targeted keywords CIA could have used to reasonably search for responsive dockets, such as DeVos's name. Plaintiff insists that DeVos's name would likely have appeared in the "attached packages" to those emails, but that point does little to show that CIA could have reasonably searched for and reviewed every email in their systems with attachments containing DeVos's name. In any event, Plaintiff does not contest that "the substance of the two pages of documents referred by Education was largely duplicative of the substance of documents that CIA produced to Plaintiff, so the absence of those two pages from CIA's previous productions makes little practical difference." ECF No. 77-2 at 3 (Defs.' MSJ, Ex. 1). As a result, the emails neither demonstrate the inadequacy of CIA's search nor reveal any prejudice to Plaintiff from that search to such a degree that justice requires disturbing the court's prior holding.

### IV.    CONCLUSION

For these reasons, the court will GRANT in part and DENY in part both Defendants' Motion for Summary Judgment, ECF No. 77, and Plaintiff's Cross-Motion for Summary Judgment, ECF No. 82. Specifically, in a corresponding Order, the court will: (1) require CIA to within 60 days produce the documents discussed in Section III.A.1., but allow it redact all of the information therein except for the names; (2) require State to within 60 days submit *ex parte* a copy of the single disputed page it has withheld in part for the court to review the redacted

portions *in camera*; and (3) permit renewed summary judgment briefing on all remaining issues, following a schedule to be jointly proposed by the parties within 60 days.

Date: September 29, 2023

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge