UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JEFFREY STEIN,<br><br>    Plaintiff,<br><br>v.<br><br>CENTRAL INTELLIGENCE AGENCY, *et al*,<br><br>    Defendants. | Civil Action No. 1:17-cv-00189 (TSC) |

## SECOND DECLARATION OF MICHAEL G. SEIDEL

I, Michael G. Seidel, declare as follows:

1.      I am the Section Chief of the Record/Information Dissemination Section (RIDS), Information Management Division (IMD), Federal Bureau of Investigation (FBI), Winchester, Virginia. I joined the FBI in September 2011, and prior to my current position, I was the Acting Section Chief from May 26, 2020 to July 26, 2020; Assistant Section Chief of RIDS from June 2016 to May 25, 2020; Unit Chief, RIDS Litigation Support Unit from November 2012 to June 2016; and an Assistant General Counsel, FBI Office of General Counsel, Freedom of Information Act (FOIA) Litigation Unit, from September 2011 to November 2012. In those capacities, I had management oversight or agency counsel responsibility for FBI FOIA and Privacy Act (FOIPA) litigation cases nationwide. Prior to my joining the FBI, I served as a Senior Attorney, U.S. Drug Enforcement Administration (DEA) from September 2006 to September 2011, where among myriad legal responsibilities, I advised on FOIPA matters and served as agency counsel representing the DEA in FOIPA suits nationwide. I also served as a U.S. Army Judge Advocate General's Corps Officer in

1

various assignments from 1994 to September 2006 culminating in my assignment as Chief, General Litigation Branch, U.S. Army Litigation Division where I oversaw FOIPA litigation for the U.S. Army. I am an attorney registered in the State of Ohio and the District of Columbia.

2. In my official capacity as Section Chief of RIDS, I supervise approximately 241 FBI employees, supported by approximately 98 contractors, who staff a total of nine (9) FBI Headquarters (FBIHQ) units and two (2) field operational service center units whose collective mission is to effectively plan, develop, direct, and manage responses to requests for access to FBI records and information pursuant to the FOIA as amended by the OPEN Government Act of 2007, the OPEN FOIA Act of 2009, and the FOIA Improvement Act of 2016; the Privacy Act of 1974; Executive Order 13,526; Presidential, Attorney General, and FBI policies and procedures; judicial decisions; and Presidential and Congressional directives. The statements contained in this declaration are based upon my personal knowledge, upon information provided to me in my official capacity, and upon conclusions and determinations reached and made in accordance therewith.

3. Because of the nature of my official duties, I am familiar with the procedures followed by the FBI in responding to requests for information from its files pursuant to the provisions of the FOIA, 5 U.S.C. § 552. Specifically, I am aware of the FBI's handling of Plaintiff's FOIA requests for records concerning two lines of inquiry. In Plaintiff's first line of inquiry, consisting of fifteen (15) separate FOIA requests, Plaintiff requested all records concerning the steps taken to investigate or authorize fifteen (15) individuals to access classified information. In the second line of inquiry, Plaintiff requested all records, especially emails,

concerning national security briefings given or to be given to Trump due to his Presidential candidacy.[1]

4. This declaration supplements, and hereby incorporates by reference the declaration of David M. Hardy dated August 24, 2018 (First Hardy Declaration, ECF No. 22-7), and my declaration dated June 26, 2020 (First Seidel Declaration) provided to Plaintiff in response to this Court's request for additional information concerning the FBI's search methodology for records responsive to Plaintiff's FOIA requests pertaining to Ivanka Trump and General Michael Flynn. *See* Memorandum Opinion dated April 14, 2020, ECF No. 45, pages 22-23, as to the purpose of the First Seidel Declaration.[2]

5. This declaration is submitted to reaffirm the FBI's withholdings pursuant to FOIA Exemptions 6 and 7(C), 5 U.S.C. §§ 552(b)(6) and (b)(7)(C), asserted in the four (4) pages processed for the Steve Bannon FOIA request that remain at issue. *See* **Ex. A**. *See* First Hardy Declaration Ex. JJ-NN for the administrative history of the Steve Bannon FOIA request No. 1364188-000. *See* First Hardy Declaration Ex. PPPP, *Vaughn* Index, Bates pages 344-347, for a description of the withholdings pursuant to Exemptions 6 and 7(C) for the pages at issue, and ¶¶ 111-113 for explanation of *Vaughn* coding.

---

[1] As to Plaintiff's second line of inquiry, Plaintiff is not challenging the FBI's search or withholdings. *See* ECF No. 28, Plaintiff's Motion for Summary Judgement, pages 7-8.

[2] The search methodology issues as to Ivanka Trump and General Michael Flynn have been resolved. The Joint Status Report (JSR) dated November 28, 2023, *see* ECF No. 92, confirms the remaining challenge as to the FBI is the application of FOIA Exemptions 6 and 7(C), 5 U.S.C. §§ 552 (b)(6) and (b)(7)(C), within records pertaining to General Michael Flynn or Mr. Steve Bannon. The FBI confirmed in the First Seidel Declaration provided to Plaintiff there were no responsive records for Plaintiff's FOIA request concerning General Michael Flynn, so the remaining challenge is the application of FOIA Exemptions 6 and 7(C) for the processed records concerning Mr. Steve Bannon.

3

## THE FBI'S WITHHOLDINGS PURSUANT TO EXEMPTIONS 6 AND 7(C) FOR PLAINTIFF'S REQUEST RELATED TO STEVE BANNON

6. The FBI reviewed Plaintiff's challenges to withholdings pursuant to Exemptions 6 and 7(C) in the four remaining pages at issue, reviewed the First Hardy Declaration justification of the FBI's withholdings pursuant to FOIA Exemptions 6 and 7(C) (*see* First Hardy Declaration, ¶¶ 120-124), and reviewed the underlying records at issue. Based on this review, the FBI determined that its withholdings pursuant to Exemptions 6 and 7(C), as well as the justifications for those exemptions previously laid out in the First Hardy Declaration, remain correct. Within the Bates pages at issue, Bates 344-347, the FBI assigned categories within exemptions (b)(6) and (b)(7)(C) to protect the "Names and/or Identifying Information of FBI Special Agents and Support Personnel" (Exemption categories (b)(6)-1 and (b)(7)(C)-1), and within Bates page 345, the FBI protected "Personal Identifying Information of the Third Parties Receiving Background Investigations" (Exemption categories (b)(6)-2 and (b)(7)(C)-2).

7. Within Bates pages 344, 346, and 347, the FBI redacted the names of FBI personnel that "Approved," "Drafted," or "Acquired," the background investigation information. The FBI determined that Exemption categories (b)(6)-1 and (b)(7)(C)-1 applies to the withheld information, and the justification provided in the First Hardy Declaration, ¶¶ 120-123, remain intact to protect the names of FBI personnel.

8. Within Bates page 345, the FBI protected the Date of Birth (DOB), Place of Birth (POB), and Social Security Number (SSN) of Steve Bannon. The FBI determined that Exemption categories (b)(6)-2 and (b)(7)(C)-2 applies to the withheld information, and the justification provided in the First Hardy Declaration, ¶ 124, remain intact as to protecting the personal identifying information of Steve Bannon.

## FORESEEABLE HARM STANDARD

9.      The FOIA Improvement Act of 2016 generally adopted the *foreseeable harm standard* and made it statutory, advising that agencies shall withhold information under the FOIA only if the agency reasonably foresees that disclosure would harm an interest protected by an exemption or disclosure is prohibited by law. Accordingly, the FBI's analysis of records responsive under the FOIA is a two-part process. First, the FBI determines whether a record (or a portion of a record) is exempt pursuant to one or more FOIA exemptions. Second, if the record (or portion thereof) is exempt pursuant to one or more FOIA exemptions, the FBI then considers whether foreseeable harm would result from disclosure of the record (or portion thereof). For the portions of withheld records at issue here, the FBI conducted this two-part analysis and only withheld portions of records where it determined the withheld portion met both of these criteria. The FBI's foreseeable harm for FOIA Exemptions 6 and 7(C) is more fully described in the First Hardy Declaration, ¶¶ 120-124.

## SUMMARY OF SEGREGABITY REVIEW OF THE PROCESSED RECORDS FOR STEVE BANNON AT ISSUE

10.     In summary, in response to Plaintiff's FOIA inquiry concerning FOIA subject Steve Bannon, the FBI segregated and processed 4 pages, of which 4 pages were released in part (RIP). The discussion below further addresses segregability:

   a. Pages RIP. Following its segregability review, RIDS determined the 4 pages processed in response to FOIA subject Steve Bannon could be released in part with redactions per the identified FOIA exemptions herein. These pages comprise a mixture of material that could be segregated for release and material that was

5

withheld as release would trigger foreseeable harm to one or more interests protected by the cited FOIA exemptions on these pages.

11. Finally, I have reviewed the material redacted from Bates 344-347 and confirmed that there was no responsive, segregable, non-exempt information.

## CONCLUSION

12. During the processing of the four pages at issue, each of the pages were individually examined to identify for release non-exempt information that could be reasonably segregated from exempt information. As demonstrated herein and in the FBI's previous declarations, the only information withheld by the FBI within the pages at issue consists of information that would trigger harm to one or more interests protected by the cited FOIA exemptions. The FBI properly withheld information pursuant to pursuant to FOIA Exemptions 6 and 7(C), 5 U.S.C. §§ 552 (b)(6) and (b)(7)(C). The FBI carefully examined the responsive records and determined that the information withheld from Plaintiff, if disclosed, would reveal information that would cause a clearly unwarranted invasion of personal privacy; and could reasonably be expected to constitute an unwarranted invasion of personal privacy. Accordingly, the FBI has released all reasonably segregable, non-exempt information to Plaintiff.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct, and that Exhibit A attached hereto is a true and correct copy.

Executed this __18th__ day of January 2024.

MICHAEL G. SEIDEL
Section Chief
Record/Information Dissemination Section
Information Management Division
Federal Bureau of Investigation
Winchester, Virginia

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JEFFREY STEIN,<br><br>Plaintiff,<br><br>v.<br><br>CENTRAL INTELLIGENCE AGENCY, et al,<br><br>Defendants. | Civil Action No.: 1: 17-CV-00189-TSC |

# EXHIBIT A

161U-HQ-2141801 Serial 6

FD-1036 (Rev. 10-16-2009)

UNCLASSIFIED



# FEDERAL BUREAU OF INVESTIGATION
### Import Form

**Form Type:** FD-1057                                     **Date:** 03/23/2017

**Title:** (U) Required Information for Investigation

**Approved By:** [          ]                                                              b6
                                                                                           b7C
**Drafted By:** [          ]

**Case ID #:** 161U-HQ-2141801       (U) Bannon, Stephen Kevin

**Synopsis:** (U) No synopsis provided

**Enclosure(s):** Enclosed are the following items:
1. (?) CI
2. (?) IP
3. (?) releases
4. (?) SF86
5. (?) CREDIT REPORT

♦♦

UNCLASSIFIED

Stein-344

Sentinel Working Copy                                                         b7E

**Import Form**

UNCLASSIFIED

**External System ID:** 09000634918300000000000006349183

**Document Title:** (U) Required Information for Investigation

**Form Imported:** FD-1057

**File:** (U) blank.txt

**Synopsis:** (U) No synopsis provided

**Filing and Security**
**Primary Case:** 161U-HQ-2141801            **Case Title:** (U) Bannon, Stephen Kevin            b7E
**Serial Number:** 6
**Serialized:** 03/23/2017
**Category:**
**Initiated:** 03/07/2017

**Referenced By:**
```
161U-HQ-2141801161U-HQ-2141801161U-HQ-2141801161U-HQ-2141801
Serial 30     Serial 31      Serial 32      Serial 27
161U-HQ-2141801161U-HQ-2141801161U-HQ-2141801161U-HQ-2141801
Lead 1        Lead 2         Lead 3         Lead 4
161U-HQ-2141801161U-HQ-2141801161U-HQ-2141801161U-HQ-2141801
Lead 5        Lead 6         Lead 7         Lead 8
161U-HQ-2141801161U-HQ-2141801161U-HQ-2141801161U-HQ-2141801
Lead 9        Lead 10        Lead 11        Lead 12
161U-HQ-2141801161U-HQ-2141801161U-HQ-2141801161U-HQ-2141801
Lead 13       Lead 14        Lead 15        Lead 16
161U-HQ-2141801161U-HQ-2141801161U-HQ-2141801161U-HQ-2141801
Lead 17       Lead 18        Lead 19        Lead 20
161U-HQ-2141801161U-HQ-2141801161U-HQ-2141801161U-HQ-2141801
Lead 21       Lead 22        Lead 23        Lead 24
161U-HQ-2141801161U-HQ-2141801161U-HQ-2141801161U-HQ-2141801
Lead 25       Lead 26        Lead 27        Lead 28
161U-HQ-2141801161U-HQ-2141801161U-HQ-2141801161U-HQ-2141801
Lead 29       Lead 30        Lead 31        Lead 32
161U-HQ-2141801161U-HQ-2141801161U-HQ-2141801161U-HQ-2141801
Lead 33       Lead 34        Lead 35        Lead 36
161U-HQ-2141801
Lead 37
```

**Details**
**Raw File Text:**

This is the Leads Coversheet

**1A/1C Packages**

**Package 1A1**

**Summary:** (U) The Bureau has been requested by the White House to conduct a       b6
Single Scope Background Investigation (SSBI) of the Candidate,                       b7C
Stephen Kevin Bannon , DOB:               , POB:             ,
SSN            . The scope of the investigation and candidate
interview is since 03/2007. BUDED is 5/10/2017 and MUST BE MET.
Neither the investigative status of a SSBI nor any deadlines are to
be disclosed to the candidate or any interviewees. Candidates making
inquiries of the status of their investigation are to be referred to
the White House. Although occasionally the position is publicly
known, do not disclose the candidate's position to interviewees.

Stein-345

Sentinel Working Copy                                                                         b7E

Field Office reporting instructions: Candidate interviews,
derogatory interviews, T-symbol interviews, and interviews where
confidentiality is requested should all be reported in Sentinel
using the FD-302. T-symbol identity information should be reported
in a separate, Administrative FD-1057. All other investigative
results should be reported in Sentinel using the FD-1057. Use the
Candidate Interview Guidelines (attached to opening EC) when
conducting a candidate interview, also refer to lead for any
additional questions that need to be asked. Refer to Investigative
Guidelines (attached to opening EC) for additional information
concerning leads that have been assigned to your office. Enclosures
(case agent notes) should not be attached to FD-1057's containing
investigative results; however they can be scanned and imported
separately into Sentinel or attached to an Administrative FD-1057.
Read and Clear leads should not be set. Every person interviewed
must be advised of two provisions: the candidate has the right to
request a copy of their background results; and they have the right
to have their identity protected. After interviewee is advised of
the Privacy Act, please ensure that the below statement is included
in your EC in the Administrative section: "All persons interviewed
were furnished the appropriate provisions of the Privacy Act.
Express promises of confidentiality have not been granted." If
confidentiality has been granted please refer to SIGBIU's Policy
Manual located on our website for information on what levels of
confidentiality can be granted and how to report. Reports completed
by the Field Office are often disseminated to SIGBIU's clients;
therefore documents should be reviewed thoroughly before being
serialized into Sentinel to ensure that they are complete and
accurate. Please contact the PSS if additional guidance is needed.

Acquired By: [        ]                                                                       b6
                                                                                              b7C
Acquired On: 03/23/2017
Receipt Given: No

Attachments:

(UNCLASSIFIED) CI
(U) 161U CI.docx (26 kB)
Digital Record
Show Attachment Preview

(UNCLASSIFIED) IP
(U) 161U IP.docx (29 kB)
Digital Record
Show Attachment Preview

(UNCLASSIFIED) releases
(U) BannonStephenReiFrms_2017_03_07_11_16_42_912.pdf (289 kB)
Digital Record
Show Attachment Preview

(UNCLASSIFIED) SF86
(U) SF86_22324816_Form.pdf (274 kB)
Digital Record
Show Attachment Preview

(UNCLASSIFIED) CREDIT REPORT
(U) BannonStephenCredit_2017_03_07_11_17_44_061.pdf (300 kB)
Digital Record
Show Attachment Preview

Indexing

b7E

| Display Name | Enterprise Role | Entity Role | Entity Type | US Person |
|---|---|---|---|---|
| No Entities to display | | | | |

|◄   ◄   Page [    ] of 1   ►   ►|   ⟳   No data to display

**Routing**

Drafted by: [          ]

Approved by: [          ]

b6
b7C

Stein-347