UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **JEFFREY STEIN**, <br><br> Plaintiff, <br><br> v. <br><br> **CENTRAL INTELLIGENCE AGENCY**, *et al.*, <br><br> Defendants. | Civil Action No. 17-189 (TSC) |

## MEMORANDUM OPINION

Plaintiff Jeffrey Stein brought this action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, et seq., challenging certain responses to a series of FOIA requests he submitted to nine federal agencies (collectively, "Defendants"): Central Intelligence Agency ("CIA"), Department of Justice ("DOJ"), Department of Defense ("DOD"), Office of Personnel Management ("OPM"), Office of the Director of National Intelligence ("ODNI"), Department of Education ("Education"), Department of State ("State"), and Department of Commerce ("Commerce"). The parties have cross-moved for summary judgment. For the reasons set forth below, the court will GRANT Defendants' motion, and DENY Plaintiff's.

### I.   BACKGROUND

The court has already described most of the relevant background for this case. *See Stein v. CIA*, 454 F. Supp. 3d 1 (D.D.C. 2020) (ECF No. 45). In short, Plaintiff requested records under FOIA from Defendants "related to Donald Trump's presidential campaign and presidential transition," including "information related to background investigations of fifteen individuals reportedly under consideration for senior positions in the Trump administration": "Stephen

Bannon, Pamela Bondi, Betsy DeVos, Carly Fiorina, Gen. Michael Flynn, Michael Flynn, Jr., Rudolph Giuliani, Jared Kushner, James Mattis, Gen. David Petraeus, Wilbur Ross, Jr., Rex Tillerson, Donald Trump, Jr., Eric Trump, and Ivanka Trump." *Id*. at 10. Then, dissatisfied with Defendants' responses to his request, Plaintiff brought this action. *Id*. at 13.

This is the third round of summary judgment motions. Only three issues remain. The first is whether State properly withheld portions of a single page in an "Adjudicative Analysis Worksheet" related to Rex Tillerson's security background investigation. After the prior round of briefing, the court ordered State to submit that page *ex parte* for the court's *in camera* review. *See Stein v. CIA*, 2023 WL 6388946, *3 (D.D.C. Sept. 29, 2023) (ECF No. 89). The two other issues are "whether [ODNI] conducted a proper segregability analysis of 31 pages that were referred by [CIA] to ODNI, which withheld them in full" and "whether the [FBI] properly applied FOIA Exemptions 6 and 7(C) to records regarding General Michael Flynn and Stephen Bannon." Defs.' Mot. for Summary Judgment at 1, ECF No. 94 ("Defs.' MSJ"); *see* Pl.'s Opp'n to Defs.' Mot. for Summary Judgment and Cross-Mot. for Summary Judgment at 1–2, ECF No. 96 ("Pl.'s Cross-MSJ").

## II.     LEGAL STANDARD

In FOIA litigation, as in all civil cases, summary judgment is appropriate when the pleadings and declarations demonstrate that there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "FOIA provides a 'statutory right of public access to documents and records' held by federal government agencies." *Citizens for Resp. & Ethics in Wash. v. U.S. Dep't of Justice*, 602 F. Supp. 2d 121, 123 (D.D.C. 2009) (quoting *Pratt v. Webster*, 673 F.2d 408, 413 (D.C. Cir. 1982)). The Act requires federal agencies to comply with requests to make their records available to the public unless such "information is exempted

under [one of nine] clearly delineated statutory [exemptions]." *Id*. (internal quotation marks omitted); see also 5 U.S.C. §§ 552(a)–(b).  In reviewing a motion for summary judgment under FOIA, the court must view the facts in the light most favorable to the requester.  *See Weisberg v. U.S. Dep't of Justice*, 745 F.2d 1476, 1485 (D.C. Cir. 1984).  Summary judgment in FOIA cases may be based solely on information provided in an agency's supporting affidavits or declarations if they are "relatively detailed and nonconclusory." *SafeCard Servs., Inc. v. U.S. Sec. & Exch. Comm'n*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (internal quotation and citation omitted).  These declarations are "accorded a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents." *Id*. (internal quotation and citation omitted).  "To successfully challenge an agency's showing that it complied with the FOIA, the plaintiff must come forward with specific facts demonstrating that there is a genuine issue with respect to whether the agency has improperly withheld . . . records." *Span v. U.S. Dep't of Justice*, 696 F. Supp. 2d 113, 119 (D.D.C. 2010) (citing *U.S. Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 142 (1989)) (quotation marks omitted).

### III.   DISCUSSION

Defendants have complied with their statutory obligations.  State and FBI have sufficiently justified the redactions that Plaintiff challenges, and ODNI conducted an adequate and consistent segregability analysis.  There is no reason for the court to order any further review or production with respect to Plaintiff's FOIA requests, and Defendants are entitled to judgment as a matter of law.

**A.   State's redactions**

State properly redacted portions of the Adjudicative Analysis Worksheet page related to Rex Tillerson's security background investigation.  The redacted portions at issue include  (1) a description of "the level of background investigation conducted, the agency that conducted it,

and the timing of that investigation"; (2) "the [security clearance] recommendation itself"; and (3) "a sentence below the [security clearance] recommendation related to ineligible recommendations." Supp. Decl. of Carlos F. Matus ¶¶ 11–13, ECF No. 77-5.  Defendants withheld those portions under FOIA Exemptions 6 and 7(C).  Exemption 6 permits withholding of "personnel and medical files and similar files" if they "would constitute a clearly unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(6).  Exemption 7(C) permits withholding records "compiled for law enforcement purposes" that "could reasonably be expected to constitute an unwarranted invasion of personal privacy."  *Id.* § 552(b)(7)(C).  The parties' dispute is not whether the withheld records fall into categories covered by the exemptions, but rather whether any privacy interests therein outweigh the public interest in disclosure.  *See Stein*, 454 F. Supp. 3d at 33.

The court's *in camera* review confirms State's assertions about the substantial privacy interests that could be implicated by information in the page's redacted fields.  Those fields could contain not only information revealing "the extent to which the agency viewed the applicant as a security risk," but also "anything in the applicant's background investigation identified as a potential security concern."  Supp. Decl. of Carlos F. Matus ¶¶ 11, 13.  For example, that information could include an applicant's criminal history, which implicates "a strong privacy interest," *U.S. Dep't of Just. v. Reps. Comm. For Freedom of Press*, 489 U.S. 749, 766 (1989), or their "psychological conditions, alcohol consumption, [and] sexual behavior," which is likewise subject to a "pronounced privacy interest," *Jud. Watch, Inc. v. U.S. Dep't of State*, 282 F. Supp. 3d 36, 44–45 (D.D.C. 2017).  These interests go beyond identifying an applicant's "actions and whereabouts" such that they could receive "unwanted attention or harassment."  *Stein*, 454 F. Supp. at 33 (quotation omitted).  Notably, the range of sensitive

information that *could be* in those fields is as important as the information *actually in* former Secretary of State Tillerson's application (if any). If State only redacted the fields when that kind of sensitive information was present, the fact of redaction itself would confirm the information's presence. State's practice of redacting them in all cases protects important privacy interests, regardless whether those interests are at stake in Tillerson's application here.

The public interest in disclosure of those fields, while not insignificant, does not outweigh the privacy interests at stake. "State's participation in the security clearance process," including whether it identified "any issues of adjudicative concern," *id.* at 33, could in theory contribute to some general "public understanding of the operations or activities of the government," *id.* at 19 (quoting *United States Dep't of Defense v. Fed. Labor Relations Auth.*, 510 U.S. 487, 495 (1994)). But any public interest tied to Tillerson's appointment as Secretary of State has diminished substantially in the eight years since Plaintiff's FOIA request in 2016. Plaintiff originally emphasized the public interest in knowing—as Tillerson was being considered for the position—whether there were "concerns about granting him access to information classified in the interests of national security." Decl. of Eric F. Stein, Exh. 10, at 2, ECF No. 22-12 (PDF page 56). It has now been years since Tillerson held that office or possessed its accompanying access to classified documents. "The public's interest, at this point, is diminished" accordingly. *Braga v. F.B.I.*, 910 F. Supp. 2d 258, 268 (D.D.C. 2012). On balance, it does not compel disclosure of the fields that State redacted.

B. **ODNI's segregability analysis**

ODNI conducted an adequate segregability analysis for the 31 pages that the CIA referred to it for review. The court has already decided that the pages are facially covered by Exemption 6, so all that remains in dispute is whether they contain "any non-exempt, reasonably segregable information." *Stein*, 454 F. Supp. 3d at 30–31. Defendants have produced

declarations averring that ODNI "reviewed each line of each page of the 31 pages," which include the following: "Five pages of . . . blank, unfilled-out personnel or . . . search forms with blank fillable fields," "four pages of . . . nearly-blank personnel or . . . search forms" only containing "personally identifiable information," and twenty-two pages that "contain only two types of information: . . . personal identifying information" and "information about previously granted security clearances, such as effective dates and level for any such clearance."  1st Decl. of Gregory M. Koch ¶ 7, ECF No. 85-2; *see* 2nd Decl. of Gregory M. Koch ¶¶ 5–7, ECF No. 94-2.  These declarations fully comply with the agency's duty to "describe what proportion of the information in a document is non-exempt and how that material is dispersed throughout the document."  *Stein*, 454 F. Supp. 3d at 31 (quoting *Mead Data Cent., Inc. v. United States Dep't of the Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977)).

Plaintiff's critique of ODNI's segregability analysis rests on the fact that the 31 withheld pages contain "blank, unfilled-out . . . forms" and "blank fillable fields."  In his view, those blank portions are segregable and should be disclosed.  Moreover, he contends that the existence of those blank portions impeaches the declarants' statements that the 31 pages contain only "two types of information"—"personally identifiable information and associated information about security clearances."  Pl.'s Cross-MSJ at 2.  Both of those arguments fail for the same fundamental reason:  Blank spaces contain no information.[1]  "Since the focus of the FOIA is information," if a document is otherwise covered by a FOIA exemption, an agency need not separate out its fragments with "minimal or no information content."  *Mead Data Cent., Inc.*, 566

---

[1] There may be instances in which the very fact of a government record being blank could reveal meaningful information—for example, that an agency failed to complete required sections of a form, or never articulated reasons for an action that it took, or lacked an authorizing signature.  But Plaintiff has not made any argument of that kind here, and the court sees no basis for one.

F.2d at 261; *see Bartko v. United States Dep't of Just.*, 128 F. Supp. 3d 62, 74 (D.D.C. 2015) ("In order to be considered reasonably segregable, the information, if disclosed, must have some meaning."), *aff'd in part, rev'd in part on other grounds*, 898 F.3d 51 (D.C. Cir. 2018). Similarly, stating that the 31 pages contain only "two types of information" is entirely consistent with the pages also containing blank forms and fields—*i.e.*, the absence of information. ODNI's segregability analysis was therefore adequate, and the presumption of its good faith remains unrebutted. *See SafeCard Servs., Inc.*, 926 F.2d at 1200.

### C. **FBI's withholding under Exemptions 6 and 7(C)**

Finally, the FBI permissibly applied Exemptions 6 and 7(C) to withhold portions of records related to the background investigations of Stephen Bannon and General Michael Flynn. At issue are redactions of personally identifying information in the Bannon case file. *See* Defs.' MSJ at 7–8. Plaintiff argues that "the date and place of Steve Bannon's birth" should not have been redacted because that information is already publicly available. Pl.'s Cross-MSJ at 4 (citing that information in the *Encyclopedia Britannica*). It is true that a privacy interest may "*fade* when the information involved already appears on the public record, . . . such as the date of [someone's] birth," but that "does not mean that it should receive widespread publicity if it does not involve a matter of public concern." *Reps. Comm. For Freedom of Press*, 489 U.S. at 763 n.15 (quotation omitted); *see Pinson v. U.S. Dep't of Just.*, 202 F. Supp. 3d 86, 105 n.6 (D.D.C. 2016) ("Of course, the fact that information is already a matter of public record does not necessarily preclude a FOIA exemption from applying."). Plaintiff does not articulate any public interest in Bannon's date and place of birth, nor explain how that interest would be served by disclosing that information here—particularly if, as he notes, it could be found by searching elsewhere. As a result, even the relatively weak privacy interests at stake here tilt toward withholding under Exemptions 6 and 7(C).

## IV.     CONCLUSION

For these reasons, the court will GRANT Defendants' Motion for Summary Judgment, ECF No. 94, and DENY Plaintiff's Cross Motion for Summary Judgment, ECF No. 96. A corresponding order will accompany this Memorandum Opinion.

Date: September 26, 2024

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge